**2014-1050**
**(Serial No. 12/827,650)**

# United States Court of Appeals
# for the Federal Circuit

IN RE EDWARD BEVERLY MORRISON,
PETR VALENTINOVICH KUZMIN, and PAVEL TISHIN,

*Appellants.*

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board*

## APPELLANTS' OPENING BRIEF

Thomas P. Pavelko
Henry A. Petri, Jr.
Brian McKnight
Daniel P. Mullarkey
NOVAK DRUCE CONNOLLY BOVE +
QUIGG LLP
1875 Eye Street, NW
Eleventh Floor
Washington, DC 20006
(202) 331-7111

*Attorneys for Appellant*

December 30, 2013

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

IN RE MORRISON
Appeal No. 14-1050

# CERTIFICATE OF INTEREST

Counsel for the Appellant, Edward B. Morrison, et al., certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Edward Beverly Morrison, Petr Valentinovich Kuzmin, Pavel Tishin

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Geotech Airborne Limited

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Henry A. Petri., Jr., Thomas P. Pavelko, Brian McKnight, Daniel P. Mullarkey, Steven Marcus
NOVAK DRUCE CONNOLLY BOVE +QUIGG, LLP


Date   December 30, 2013                    /s/ Thomas P. Pavelko
                                            Thomas P. Pavelko
                                            Counsel for Appellant

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION........................................................1

I.    STATEMENT OF THE ISSUES ...................................................2

II.   STATEMENT OF THE CASE .......................................................3

III.  STATEMENT OF FACTS ...........................................................10

    A.   The '650 Application .......................................................10

        1.  Appealed Claims 28-36 ...........................................10

        2.  Overview of the original patent being reissued ...............10

    B.   Background of the Technology...........................................15

    C.   The PTAB Decision..........................................................16

IV.   SUMMARY OF ARGUMENT .....................................................17

V.    ARGUMENT.................................................................................18

    A.   Standard of review ...........................................................18

    B.   The PTAB erred in its view that the reissue statute is limited to only broadening or narrowing original claims.......................19

        1.  The reissue statutes (35 U.S.C. § 251 *et seq.*) are remedial in nature ...........................................................19

        2.  The law is well settled that "overlooked embodiments" of an invention are proper subject matter for a reissue application ........21

a. First, the PTAB argues that the appealed claims 28-36 should have been classified in the same non-elected Group III (claims 30, 31, 34 and 35) of the '813 Patent...........27

b. Secondly, the PTAB ignores the law of the case ......................30

3. Although courts had initially struggled with the proposition that overlooked subject matter might not, when added as new claims to a reissue application, be found to satisfy the "intent to claim" requirement, the courts have reconciled the notion of "intent to claim" as being synonymous with "right to claim". .......................................................................................32

4. The PTAB's finding that "failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been "error" as set forth in § 251" is contrary to the precedent of this court ........................................................................................35

CONCLUSION .....................................................................................37

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ball Corp. v. United States,*
  729 F.2d 1429, 221 USPQ 289 (Fed.Cir.1984) ...................................................19

*In re Amos,*
  953 F.2d 613, 21 USPQ2d 1271(Fed.Cir.1991) ............................... 22, 23, 25, 35

*In re Bennett,*
  766 F. 2d 524, 226 USPQ 413 (Fed. Cir. 1965) ...................................................19

*In re Clark,*
  522 F.2d 623, 187 USPQ 209 (CCPA 1975)........................................................24

*In re Cornell,*
  32 CCPA 1251, 150 F.2d 702, 66 USPQ 320 (1945)..........................................26

*In re Handel,*
  312 F.2d 943 (CCPA1963) ..................................................................................21

*In re Hounsfield,*
  699 F.2d 1320, 216 USPQ 1045 (Fed.Cir.1983) .................................................24

*In re Mead,*
  581 F.2d 251, 198 USPQ 412 (CCPA1978)........................................................23

*In re Orita,*
  550 F.2d 1277 (CCPA1977) ....................................................................... *passim*

*In re Rowand,*
  526 F.2d 558, 187 USPQ 487 (CCPA1975)........................................................23

*In re Serenkin,*
  479 F.3d 1359 (Fed.Cir.2007) .............................................................................19

*In re Smyser,*
  30 CCPA 1093, 135 F.2d 747, 57 USPQ 402 (1943).........................................26

*In re Tanaka*,
    640 F.3d 1246 (Fed.Cir.2011) ...............................................................20

*In re Weiler*,
    790 F. 2d 1576, 229 USPQ 673 (Fed. Cir.1986) ......................... 21, 32

*In re Wilder*,
    222 USPQ 369 (Fed.Cir.1984) ...................................................... 24, 35

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed.Cir.1995) ...............................................................20

## Statutes, Rules and Regulations

28 U.S.C. § 1295 (a) (4) (A) ...................................................................1

35 U.S.C. § 64 (1946) .............................................................................23

35 U.S.C. § 112 .......................................................................................22

35 U.S.C. § 134 ....................................................................................1, 8

35 U.S.C. § 141 .........................................................................................1

35 U.S.C. § 142 .........................................................................................1

35 U.S.C. § 251 ............................................................................ *passim*

MPEP § 806.05 (d)................................................................. 4, 6, 30, 31

# STATEMENT OF RELATED CASES

Appellants (hereinafter "Morrison") are unaware of any other appeals or petitions that involve the patent application serial number 12/827,650 (hereinafter the " '650 application"), or the Decision on Appeal (A1-12) with a mailing date of July 18, 2013 ("Decision"), by the Patent Trial and Appeal Board ("PTAB") in Appeal No. 2012-012266.

# STATEMENT OF JURISDICTION

This appeal arises from the dissatisfaction of Morrison with the Decision of the PTAB (A1-12) mailed July 17, 2013, of the United States Patent and Trademark Office ("PTO") in Appeal No. 2012-012266 (A269-270), in respect to the '650 patent application taken under Title 35, U.S.C.§ 134.  The appeal from the PTO decision was filed with the Director of the PTO under 35 U.S.C. § 141 on September 13, 2013, within 60 days of the Decision of the PTAB in accordance with 35 U.S.C. § 142, and is thus timely. This court has exclusive jurisdiction of this appeal under 28 U.S.C. § 1295(a)(4)(A).

# I.   STATEMENT OF THE ISSUES

1. Did the PTAB err in affirming the examiner's final rejection with respect to claims 28-36 that the original '914 patent (upon which this reissue application is based) was "error free"?

2. Does the PTAB's view that "[T]he whole purpose of the [reissue] statute, so far as the claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow" demonstrate the PTAB's misunderstanding of the current reissue statute, in omitting the option that new reissue claims can properly be added directed solely to disclosed and enabled embodiments that were never claimed in the original patent?

3. Is the right of a patentee to avail himself of the remedial provisions of 35 U.S.C. § 251 to obtain a broadened reissue patent to fully disclosed, but *unclaimed* subject matter in the original patent, nullified merely due to the presence of restricted inventions which patentee chose not to pursue in divisional applications?

4. Is the PTAB's statement that "'even if the present reissue claims were 'not non-elected' in the 813 Application, we agree with the Examiner that failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been 'error' as set forth in § 251…" a misstatement of the law on reissue?

## II.   STATEMENT OF THE CASE

This appeal is from the Board's decision (A1-12) rejecting Divisional Reissue Patent Application serial number 12/827,650 ("the '650 application") (A18-37) , involving Co-inventors, Edward Beverly Morrison, Petr Valentinovich Kuzmin and Pavel Tishin (herein collectively "Morrison") based upon original Patent No. 7,157,914 entitled Airborne Electromagnetic Time Domain System, Computer Product and Method ("the original patent").

Morrison filed the '650 application (A17-37) in order to claim subject matter disclosed in the original patent, specifically new claims 28-33 (A69-70), that were omitted by error during prosecution of the original patent application (A58-61, A134-135), U.S. Patent Application Serial No. 10/716,813 (hereinafter "the original application" ).

3

The original application contained 29 claims as originally filed. However, in response to an Office Action on the merits, Morrison presented an Amendment canceling claims 2, 11, 14 and amended claims 1, 3, 5, 12, 15-16, 22-29, and added new claims 30-35. These remaining claims, i.e., claims 1, 3-10, 12-13, 15-35, were subject to a Restriction Requirement. The examiner grouped these claims as follows (A207-208):

> I.   Claims 1, 3-10, 12, 13, 15-28, 32 and 33, drawn to a method and apparatus using a tow assembly …classified in class 324, subclass 330.
>
> II.  Claim 29, drawn to a computer program … classified in class 702, subclass 5; and,
>
> III. Claims 30, 31, 34 and 35, drawn to a trailing airborne surveying system having specific antenna structures, classified in class 343, subclass 707.

In justifying the restriction requirement, the Examiner found that "Groups II and III have a separate utility from Group I as not requiring a receiver antenna flexibly mounted to a receiver from or required a dual mode gain amplifier" citing MPEP § 806.05 (d).

Morrison elected the group I invention (claims 1, 3-10, 12, 13, 15-28, 32 and 33) and prosecuted these elected claims to conclusion in the original patent, which issued January 2, 2007. Morrison did not file divisional patent applications directed to the computer program of claim 29, nor to the trailing airborne surveying system of claims 30-31, and 34-35 (A4).

4

On December 23, 2008, well within the two year limit set forth in 35 U.S.C. § 251 for filing a "broadened reissue application," Morrison filed United States reissue patent application 12/343,321 (hereinafter the "first reissue application") (A4). The first reissue application contained claims 1-27 of the Original Patent, plus new claims 28-33 (A5), directed to fully disclosed and enabled, but overlooked embodiments of the invention. A Reissue Declaration, attesting to the error that the original patent is wholly or partly inoperative or invalid in claiming less than Morrison has a right to claim in not presenting claims 28-33 in the original patent, was executed by all the inventors.

The Examiner required restriction between the claims of the first reissue application as follows:

I.    Claims 1-27, drawn to a method and apparatus for airborne electromagnetic surveying and circuitry therefor, classified in class 324, subclass 330.

II.   Claims 28-33, drawn to an antenna for a tow assembly, classified in class 343, subclass 707,

(A5), and further noted (A221-222) that:

> "Inventions in Group I and II are related as subcombinations disclosed as usable together in a single combination. The subcombinations are distinct if they do not overlap in scope and are not obvious variants, and if it is shown that at least one subcombination is separately usable. In the instant case, subcombination in Group II does not require the particular flexible support and the transmitter driver as required in Group I and thus has separate utility such as usable in apparatus not requiring such circuitry. Furthermore, the subcombination in Group I does not require the particular structure of transmitter support frames and

5

connector cables as required in Group II and thus has separate utility as usable in apparatus not requiring such structures." (citing MPEP § 806.05(d)).

The Examiner held the Group II invention "constructively non-elected," and claims 28-33 were canceled from the first reissue application.    The "law of the case" regarding the relationship of the various restricted inventions was thus established by these restriction requirements. The Examiner never grouped the appealed claims as belonging to the non-elected invention, Group III, of the original patent.

Morrison timely filed a divisional reissue application, the '650 application, directed to the subject matter of only restricted claims 28-33 (A36-37). In a non-final Office Action mailed August 20, 2010 (A74-83), new claims 28-33 were rejected only over prior art. No rejections were made based upon a "defective reissue declaration" or set forth any rejection of the claims under 35 U.S.C. § 251(A 142-146). In a response to the Office Action of August 20, 2010, independent claim 28 was amended to overcome a rejection based on prior art, and new dependent claims 34-36 were added (A133-139).

Having overcome the rejections of claims 28-36 over the prior art, Morrison expected to receive a Notice of Allowance.  Instead, the Examiner, for the first time, in the office action mailed May 9, 2011, (A145-149) raised a rejection under 35 U.S.C. § 251, alleging that "the reissue oath/declaration is

6

defective because the error which is relied upon to support the reissue application is not an error upon which a reissue can be based" and furthermore set forth the rejection: "[C]laims 28-36 are rejected as being based upon a defective reissue Oath/Declaration under 35 U.S.C. 251 as set forth above." As a reason for finding no correctable error in the original Patent, the Examiner stated (A147):

> During the prosecution of the patent to which this divisional reissue is sought (U.S. Patent 7157914 based on App. 10716813 on August 18, 2006, Applicants elected without traverse to prosecute the invention of Group I (claims 1, 3-10, 12,13, 15-28, 32 and 33 of the '813 application). However, Applicants never filed any divisional applications covering such non-elected *species* (emphasis added).

A response to the Office Action of May 9, 2011, was filed on August 9, 2011, (A153-159), pointing out that Applicants claimed less than they had a right to claim, as supported by the reissue oath/declaration, paragraphs 7-8, (A59) which specifically stated that Applicants claimed that "I believe the [original patent] is wholly or partly inoperative by reason of an error in claiming less than I had a right to claim in the [original patent]…" and that this error came about in that "I claimed my invention too narrowly in overlooking embodiments of my invention which pertain to a method for providing a tow assembly…."

On August 24, 2011, the Examiner issued a Final Office Action, (A160-166) in which he stated that:

> The claims of the present divisional reissue application *read on or are broader* versions of the claims in Group III (claims 30, 31, 34 and 35) of the [original] application and thus cover the primary features of the

7

Group, i.e., the specific features of the antenna structures of the towed assembly. Alternatively, *if* these divisional reissue claims were presented in the [original] application during prosecution thereof, they would also have been subject to the same restriction by *either* being placed in Group III *or in a separate group* for similar reasons for restriction from Group I. Thus, the present claims *should have been presented in a divisional application* to the parent application (emphasis added) (hereinafter the "*read on or broader version*").

The appeal to the PTAB under 35 U.S.C. § 134 (a) was filed on February 23, 2012 (A178).

In the PTAB Decision (A1-12), the Board did not address the Examiner's findings in the first reissue application that Group I (the original claims 1-27 of the original patent) and Group II (the newly added claims 28-33) were related as "Inventions in Group I and II are related as subcombinations[1] disclosed as usable together in a single combination." The PTAB did not address the Examiner's findings in the first reissue application that "the … subcombination in Group II does not require the particular flexible support and the transmitter driver as required in Group I and thus has separate utility such as usable in apparatus not requiring such circuitry. Furthermore, the subcombination in Group I does not require the particular structure of transmitter support frames and connector cables

---

[1] The Examiner's allegation that the Groups II and III in the original application were related as "species" was clearly a misstatement on the part of the Examiner and were never repeated by either the Examiner or the PTAB, as the Examiner had stated in the original requirement (A207-208), as well as the requirement in the first reissue application (A221-222), that the groups were related as *subcombinations*, not species.

as required in Group II and thus has separate utility as usable in apparatus not requiring such structures."

The PTAB also did not adopt the Examiner's *read on or broader version* allegation made in the '650 application. Instead, the Decision resorts to speculation about *what might have happened* had Morrison included claims 28-33 (now the claims 28-36 before the court) in the original application, i.e., whether such claims might have been grouped with the non-elected Group III. See paragraph 13 of the Decision (A6). The Board created its own table (A10) to compare the claims of original claim 34 and new claim 28, finding (A11) that:

> A comparison of the subject matter of method claim 28 of the present reissue Application 12/827,650 to the subject matter of apparatus claim 34 of the [original] application leads us to a similar invention in that there is no substantial difference between the claims even though they are directed to different statutory categories.  In this case, these claims are simply not patentably distinct.

In making its table, the PTAB left out a number of limitations from each of claims 28 and 34, as discussed in detail below.

Alternatively, the Board stated (A11) that:

> [E]ven if the present reissue claims were "not 'non-elected' in the [original] Application, we agree with the Examiner that failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been "error" as set forth in § 251…(emphasis added).

Morrison appealed (A178).

## III.  STATEMENT OF FACTS

### A. The '650 Application

#### 1.  Appealed Claims 28-36

Claim 28 is representative of the claims on appeal and is reproduced[2] as follows:

> 28.    A method for providing a tow assembly for an electromagnetic airborne survey system at an assembly location, comprising:
>
>> providing a plurality of hollow transmitter support frame sections;
>>
>> providing a transmitter coil for generating a primary magnetic field;
>>
>> providing connector cables and a tow cable; and
>>
>> assembling the transmitter support frame sections and the transmitter coil and the cables to provide a tow assembly having a flexible hollow transmitter support frame that is circular or approximates a circle having the transmitter coil disposed within the hollow transmitter support frame and formed from serially connecting the transmitter support frame sections, with the connector cables each having a first end connected to a respective location on a circumference of the transmitter support frame and a second end connected to a first end of the tow cable.

#### 2.  Overview of the original patent being reissued

Without dispute, the original patent (A18, 20-35) disclosed several separate and distinct inventions, as evidenced by the several restriction requirements made

---

[2] Claim 28 is reproduced with underlining indicative of a new claim in a reissue application.

during prosecution of both the original patent and the first reissue application.  One of these inventions, described in claims 1-27 of the original patent (A33-35), is directed to both an airborne time domain electromagnetic surveying system and method of producing survey data including the steps of flying an aircraft with a lightweight survey tow assembly connected thereto.

The system was more particularly defined by including a tow assembly for connection to an aircraft, the tow assembly including a flexible support frame including a transmitter section having a central axis and including transmitter means; and a receiver section including a receiver support frame and a sensor means, where the sensor means is flexibly connected to the receiver support frame for vibration reduction, and further includes a transmitter driver linked to the transmitter section, in a spaced apart relationship being operable to reduce noise, wherein the transmitter driver  and transmitter section, in cooperation, enable the system in an "ON" interval to generate an earthbound electromagnetic field pulse effective for geological surveying, and wherein an earth response to the electromagnetic field is sensed in an "OFF" interval by the sensor means; and, a dual-mode gain amplifier linked to the sensor means that enables low linear gain amplification during the "ON" interval and switches to non-bucking high linear gain amplification during the "OFF" interval, wherein the switch is rapidly

achieved. A schematic representation of the foregoing invention is shown in Fig. 1

of the original Patent (A23):



FIG. 1

In contrast to the foregoing invention, Morrison also disclosed the following

invention at column 4, lines 20-column 5, line 4 of the original patent (A21-22):

> One aspect of the present invention is the ease in which the tow
> assembly **14** can be assembled, disassembled and therefore
> transported from one location to another. Another aspect of the

present invention is that the flexible frame **15** overall can be adjusted in terms of its size to suit for particular applications.

To this end, the transmitter section **16**, in a particular implementation of the present invention, as shown in FIG. 4, consists of a substantially octagonal support frame **20**. The support frame **20** consists of a plurality of substantially tube sections **22**. As best shown in FIG. 5 *a*, the various tube sections at the corners are interconnected by means of elbow sections **24**.

The tube sections **22** can consist of a single piece, or multiple pieces that can be interconnected. The tubing used in the present invention consists of composite material tubing such as fiberglass or Kevlar. Alternatively, the components (described below) of the support frame **20** can be made of carbon fiber for increased strength, preferably with non-conductive areas along the length of one or more of the components to avoid the anomaly that would be caused by a complete conductive loop.

One embodiment of the support frame **20** of the present invention described consists of tube sections **22** and elbow sections **27** (not shown) whereby adding additional tube sections **22** or multiple pieces together providing one of the tube sections **22**, as well as additional elbow sections **24**, provides a support frame **20** having a greater surface area. It should be understood that tube sections **22** and elbow sections **24** can be added or removed to increase or decrease the surface area.

While the support frame **20** shown in the Figures has an octagonal shape, it should be understood that the present invention also contemplates support frames **15** having other polygonal shapes, although a polygonal shape approximating a circular shape is generally preferred. It should be understood that the modular pieces together providing the support frame **20** can be modified to provide a support frame **20** having a substantially circular profile. Also, in applications of the present invention where transportation and adjustment of the size of the flexible frame **15** is not required, the support frame can be provided in a single unitary construction, as opposed to the modular construction described above.

13

It should be understood that the construction of the support flame **20** described herein enables a relatively large surface area while the support frame **20** of the present invention is also relatively lightweight. By way of example only, it was found that the construction described herein easily permitted an increase of the transmitter loop diameter (or more than) up to **26** meters while permitting maneuvering of the aircraft **12** with the tow assembly **14** in tow.

It is this described and enabled method that provides Morrison the right to claim the invention set forth in claims 28-36 (A199-201) directed to a *method* for *assembling* the hollow transmitter support frame that is circular or approximates a circle having the transmitter coil *disposed within* the hollow transmitter support frame of the tow assembly, formed from serially connecting the transmitter support frame sections; (and *disassembling* the same (Claim 36) (A201)). This invention was initially overlooked by Morrison without deceptive intent, and is now the invention which Morrison seeks to claim in this broadened reissue patent application. Grant of these claims will correct the inoperativeness of the patent permitting Morrison the right to exclude others from making, using, selling or offering to sell this method within the United States.

As the Examiner incontestably found in the original application (A207-208) and in the first reissue application (A221-222), these inventions are separate and distinct, even though related as subcombinations.

## B. Background of the Technology

As the proceedings in the PTO (A160-166) and the Decision (A1-12) demonstrate, there is no prior art basis to reject claims 28-36. Moreover, the logistical problem of how to provide the invention at various locations about the country, such as for use in such disparate locations about the country,[3] was described and enabled, but *never claimed*, in the original patent. Thus, the currently claimed embodiment of the invention, directed to a method for providing a tow assembly for an electromagnetic airborne survey system at an assembly location, in the form of a plurality of hollow transmitter support frame sections, assembling the support frame sections, as well as disassembling the tow assembly into its component parts, created a valuable logistic solution to providing the invention at various, geographically separated, locations throughout the country. This was neither described in the prior art, nor envisioned as part of the invention in the non-elected Groups II or III or the original application. However, the failure to claim this embodiment of the invention in the original patent made the original patent *partly inoperative* to protect this embodiment of the invention against others

---

[3] The invention provides a method for use in such disparate places as California and then New Hampshire (A299), especially as the size of the transmitter loop of the present invention can be more than 26 meters (column 5, lines 2-3) (A22), which prohibited shipping of a single unitary constructed airborne device by rail or truck.

in using the disclosed invention, and therefore constitutes the "error" in the original patent.

## C. The PTAB Decision

The PTAB does not address the allegations of the Examiner that claims 28-36 are a "non-elected species" (as the Examiner initially contended in the Office Action of May 9, 2011, in the '650 Application), nor the alternative "*read on or broader version*" allegation, and it does not address the "law of the case" that Claims 1-27 (Group I) and reissue application claims 28-36 were found by the Examiner in the first reissue application as related, though separate, and distinct, inventions.

Instead, the Board created its own evidence, in the form of a table (A10), purporting to compare instant claim 28 with non-elected claim 34 of the original application in order to support its factual finding that "[we, the PTAB] see no substantial difference with respect to the scope and the structural features between the claims [28 and 34]."

In addition, the PTAB, presumably relying on *Orita, infra,* takes the totally unsupportable position that:

> [E]ven if the present reissue claims were "not 'non-elected'" in the [original] Application, we agree with the Examiner that failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application*

16

would not have been "error" as set forth in § 251…
(emphasis added).

## IV.   SUMMARY OF ARGUMENT

It was error for the PTAB to maintain that certain overlooked subject matter, now embodied in claims and directed to disclosed and enabled embodiments of reissue applications, should be denied on the basis that the reissue statute is limited to only permitting limitations to be "added to claims that are too broad or taken from claims that are too narrow."[4] This limited view omits the proposition that reissue applications can properly be directed to disclosed and enabled, but overlooked, embodiments of the invention that are recognized only after the original patent has issued, and is contrary to law.

There is a substantial body of case law that supports the proposition that disclosed and enabled, but overlooked, embodiments of the invention to which claims have never been presented in the original patent can properly be recognized as "error" which can be corrected by reissue.

Although courts had initially struggled with the proposition that overlooked subject matter might not, when added as new claims to a reissue application, be

---

[4] The predecessor statute to that of the 1952 Patent Act contained a requirement that reissues must be directed to the "same invention" as the original patent. No post-1952 version of the reissue statute contained that requirement, but instead contained the language "for the invention disclosed in the original patent."

17

found to satisfy the "intent to claim" requirement, the courts have reconciled the notion of "intent to claim" as being synonymous with "right to claim."

It was also error for the PTAB to create a table (A10) purporting to compare original claim 34 with reissue claim 28 that omitted limitations from each of these claims, especially when Morrison had prepared a table (A158-159) which accurately compared the recited limitations of each of these claims.

It was also error for the PTAB to make conclusions based on its incomplete, inaccurate table that "a comparison of the subject matter of … claim 28…to the subject matter of …claim 34…[determining] there is no substantial difference between the claims…" (A11).

Further, the PTAB's finding that "failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been "error" as set forth in § 251" is contrary to the precedent of this court.

## V.    ARGUMENT

### A.    Standard of review

The issues on appeal comprise a mixture of law and fact. The factual issues are reviewed for "substantial evidence" supporting the fact. In the absence of disputed facts, this court reviews the legal question of whether an applicant

satisfies the statutory requirements of 35 U.S.C. § 251 *de novo, In re Serenkin,* 479 F.3d 1359, 1361(Fed. Cir. 2007).

### B.   The PTAB erred in its view that the reissue statute is limited to only broadening or narrowing original claims

The failure by the PTAB to recognize that disclosed and enabled, but unclaimed, embodiments makes the original patent wholly or partly inoperative and therefore is a proper basis of "error" in a reissue application mandates a reversal of the Board decision as a matter of law.

#### 1.  The reissue statutes (35 U.S.C. § 251 *et seq.*) are remedial in nature

The patent reissue statutes (35 U.S.C. § 251 *et seq.*) are remedial in nature, and should be broadly construed to effect the intent of correcting defects in patents.

This court has construed the legislative intent[5] of the reissue statutes in *In re Bennett*, 766 F. 2d 524, 226 USPQ 413 (Fed. Cir. 1965), where it stated:

> The purpose of the reissue statute is to remedy errors. As stated in *Ball Corp*[6]., 729 F.2d at 1439 n. 28, 221 USPQ at 296 n. 28, '[r]eissue is remedial in nature and is based on fundamental principles of equity and fairness.' These fundamental principle must not be forgotten in implementation of the statute.

---

[5] Although section 251 has recently been amended under the America Invents Act ("AIA"), such amendments are not relevant to consideration of the appeal as the application is subject to pre-AIA law. The AIA eliminates the requirement for an error to have arisen "without deceptive intent."

[6] *Ball Corp. v. United States,* 729 F.2d 1429, 221 USPQ 289 (Fed. Cir. 1984)

This court has recently addressed the reissue statute in the case of *In re Tanaka*, 640 F.3d 1246, 1252 (Fed.Cir.2011):

> As interpreted by this court, the reissue statute imposes two requirements for properly invoking the reissue process. First, the original patent must be "wholly or partly inoperative or invalid." Second, "the defective, inoperative, or invalid patent" must have arisen "through error without deceptive intent" (internal citations omitted).

The court in *Tanaka* recognized that a patent may be inoperative under § 251 if it is ineffective to protect the *disclosed* invention. The court had earlier recognized that "each claim is a separate statement of the patented invention" citing *Pall Corp. v. Micron Separations, Inc.* 66 F.3d 1211, 1220 (Fed.Cir.1995), and further found that "each claim of a patent has a purpose that is separate and distinct from the remaining claims," *Tanaka, supra*, at 1220. Although *Tanaka* involved correction of a different error than that involved here, it is important to note that reissue applicant's statement in the reissue oath/declaration is important in providing evidence that the patent is wholly or partly inoperative, identifying the "error," and establishing that the error arose without deceptive intent.

The only *evidence* pertaining to error is the *unrebutted* statements in Morrison's Reissue Declaration and Supplemental Reissue Declaration(s) (A58-61, A134-135). Morrison has been consistent in his statement of error as follows:

> I believe that the [original] patent is wholly or partly inoperative by reason of an error in claiming less than I had a right to claim in the [original] patent … [and]

20

> In particular, without error or deceptive intent, I claimed my invention too narrowly in overlooking embodiments of my invention …

Judge Rich, in *In re Handel*, 312 F.2d 943, (CCPA1963) remarked, in a footnote, that the term "inoperative" has been construed to mean "inoperative adequately to protect the invention…." Neither the Examiner, nor the Board, introduced any *evidence* to controvert or dispute Morrison's evidence that the original patent was inoperative. Thus, there is no substantial evidence supporting the PTAB's decision that the original Patent was "error-free."

## 2. The law is well settled that "overlooked embodiments" of an invention are proper subject matter for a reissue application

The PTAB relies on *In re Weiler*, 790 F. 2d 1576, 1580, 229 USPQ 673, 675 (Fed. Cir.1986), for the proposition "[T]he whole purpose of the [reissue] statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow," citing *In re Handel,* 312 F.2d at 948. In so interpreting the limited nature and purpose of the reissue statutes, the PTAB has ignored an entire body of law demonstrating correction of re-issuable error in failing to claim fully disclosed and enabled, but overlooked, subject matter contained in the original specification, which was never claimed in the original patent.

21

*In re Amos*, 953 F.2d 613, 21 USPQ2d 1271(Fed. Cir. 1991) was one such case, in which the original patent contained claims1-9 directed to a set of rollers mounted to hold down a workpiece laid upon a moving table until the end of the table is reached. The rollers are designed to lift away so that they cannot fall off the end of the table. The specification contemplated that lifting of the rollers will occur automatically. The original claims were not directed to the alternative, but unclaimed, embodiment of using a computer to control the lifting of the rollers.

Less than one year after issuance, and thus, well within the statutory time permitted to file a broadened reissue, the patentees filed an application and reissue declaration with the PTO in which they stated that they believed "the original patent to be through error, without deceptive intention, wholly or partly inoperative or invalid for the reason that we [the patentee] claimed less than they had a right to claim in not including claims 10, 11 and 12, which are directed to the concept of controlling the rollers and clamps by a computer."

One of the rejections made by the examiner and sustained by the Board in *Amos* was that although the subject matter [of reissue claims 10-12] was disclosed in accordance with 35 U.S.C. § 112, the Board concluded, 21 USPQ at 1273, that :

> [A]ppellants' failure to claim the subject matter of claims 10 through 12 was not the result of 'error' required by 35 USC 251. The subject matter of claims 10 through 12 was not originally claimed, not an object of the original patent, and not depicted in the drawing. Thus, we perceive that the *objective*

22

*intent* of the patentees manifested in the original patent was to solely claim the invention of claim 1 through 9 (emphasis in the original).

Thus, the Board decision rested on their subjective observation that Amos had not demonstrated his "intent to claim" the use of a computer to lift the rollers. The court reversed the PTO insofar as the phrase "intent to claim" does not appear in the reissue statute, *Amos,* 953 F.2d at 616, 21 USPQ 2d at 1274. The court relied, in part, upon the binding precedent of its predecessor court (The Court of Customs and Patent Appeals) and its decisions in *In re Rowand* 526 F.2d 558, 187 USPQ 487 (CCPA1975) and *In re Mead*, 581 F.2d 251, 198 USPQ 412 (CCPA1978) which discussed the legal parameters of prior decisions that supported the "same invention" or "original patent" rejections of claims in a reissue application.  Those rejections arose from the previous statutory requirement that the reissue be for the "same invention" as the original, i.e., that it cover what was "intended to have been covered" by the original patent [citing 35 U.S.C. § 64(1946), *repealed by* the Patent Act of 1952]. In summarizing reissue decisions under the pre-1952 Patent Act, the court concluded:

> Thus, in *Rowand* and similar cases, "intent to claim" has little to do with "intent" *per se*, but rather is analogous to the requirement of § 112, first paragraph that the specification contain a "written description of the invention, and of the manner and process of making and using it. It is, as appellant urges, synonymous with "right to claim."

In accord is *In re Hounsfield*, 699 F.2d 1320, 216 USPQ 1045 (Fed.Cir.1983), cited in *Amos* and discussed in footnote 3 thereof.

Thus, the requirement that patentee base the application for reissue upon one of the statutorily-identified grounds for reissue as correctable defects, as annunciated by the CCPA in *In re* Wilder, 222 USPQ 369 (Fed.Cir.1984), citing *In re Clark,* 522 F.2d 623, 625-26, 187 USPQ 209, 211-12 (CCPA 1975), has been satisfied by Morrison on the record before the PTAB.

Here, as in *Amos*, Morrison filed his reissue application well within the two year limit of section 251 for "broadening" reissues, stating that:

> I believe that the [original] Patent is wholly or partly inoperative by reason of an error in claiming less than I had a right to claim in the [original] Patent …

and the Reissue Declaration (A58-61) explicitly placed the public on notice of the same, by including the statement

> [A] broadening reissue application for the [original] Patent was filed December 23, 2008 and has been assigned US SN 12/343,321. I have reviewed and understand the contents of this broadening reissue application including the new claims 28-33 added in this application.

The reissue declaration continued (paragraph 8) (A59):

> In particular, without error or deceptive intent, I claimed my invention too narrowly in overlooking embodiments of my invention which pertain to a method for providing a tow assembly…

Thus, like the reissue applicant in *Amos,* adding claims to a disclosed and enabled, but overlooked embodiment, is a proper basis for a "broadening" reissue application under the reissue statute.

The only difference in the facts between *In re Amos* and those here, is the presence of additional invention(s) in the original patent that were subject to a restriction requirement. The non-elected invention(s) were not the subject matter of divisional application(s).

The case of *In re Orita*[7] stands for the proposition that it is "not error" under the reissue statutes to fail to file divisional application(s) on non-elected invention(s).

To support its position that it was "not error" to fail to include disclosed and enabled, but unclaimed embodiments of the invention, the PTAB erred in attempting to improperly enlarge the *Orita* decision (or *doctrine*) to apply to claims that were never presented in the original patent. The "*Orita* doctrine" does not apply to claims that were never the subject of a restriction requirement.

In *Orita*, the court found that it was not "error" to fail to timely file a divisional application for reissue seeking to claim subject matter that *had been* non-elected due to a restriction requirement in the original patent, *Orita*, 550 F.2d

---

[7] 550 F.2d 1277 (CCPA1977)

25

at 1280, 193 USPQ at 148. The court based its finding on rationale found in pre-1952 Act in the cases of *Cornell*[8] and *Smyser*.[9] There the court found:

> In the case at bar, as in *Cornell* and *Smyser*, appellants acquiesced in the Examiner's requirement for restriction. Such action manifestly was not "error" causing patentee to claim "less than he had a right to claim in the patent" in the language of current section 251.

Therefore, *Orita* stands for the proposition that non-elected claims subject to a restriction during prosecution cannot be added in a reissue application as known "non-elected claims" cannot be attributable to "error" by applicants.

However, it goes without argument that current claims 28-36 were *never presented* in the original application and therefore were *not the subject of a restriction requirement* in the Original Patent. Morrison cannot be said to have relinquished his *right to claim* the subject matter of claims 28-36, because these claims had never been subject to a restriction requirement in the original application, nor non-elected in the original patent prosecution.

The PTAB now seeks to enlarge the *Orita* doctrine to preclude applicants from obtaining by reissue claims that would have constituted error in the original patent,  merely because of a requirement for restriction for other claims, now non-elected in the original patent, in which requirement applicants had acquiesced by

---

[8] *In re Cornell*, 32 CCPA 1251, 150 F.2d 702, 66 USPQ 320 (1945).

[9] *In re Smyser*, 30 CCPA 1093, 135 F.2d 747, 57 USPQ 402 (1943).

26

not filing divisional application(s) thereto.  There are many reasons why applicants may not wish to file divisional applications to non-elected subject matter, not the least of which are costs associated with patent applications directed to the non-elected invention(s).  However, any such decision not to file divisional application(s) has no effect on the "error" set forth in the reissue declaration(s).

The PTAB's attempt to enlarge Orita has two prongs:

### a. First, the PTAB argues that the appealed claims 28-36 should have been classified in the same non-elected Group III (claims 30, 31, 34 and 35) of the Original Patent

The PTAB states that, in its view, "the critical issue is the relation of the subject matter of newly presented claims 28-36 to the subject matter covered by Groups I-III of the restriction requirement of the 813 application." The PTAB attempts to sustain this view by creating its own "evidence" in the form of a table (A10) in a form purporting to compare new claim 28 to previously restricted claim 34. However, the Table is incomplete in omitting several limitations from each of claims 28 and 34 and therefore, serves no purpose of comparison as the PTAB alleges.

Not only is the PTAB-created table an incomplete comparison of the recitations of instant claim 28 to non-elected claim 34, preventing any meaningful comparison of the limitations of these two claims, and therefore not establishing substantial evidence, but by completely omitting the manipulative steps "*serially*

*connecting* the transmitter support frame sections" and "*having* the transmitter coil *disposed within* the hollow transmitter support frame," as recited in *method* claim 28 from the table, the reader is left with the impression that these limitations simply do not exist. Thus, the statutorily distinct classes of method, represented by the omitted manipulative steps of claim 28 and the omitted structural components of apparatus claim 34 are ignored by the PTAB in its determination that "there are no substantial difference between the claims…" (A11), because the PTAB did not include the differences in its table.

During prosecution, Morrison prepared a Table setting forth the recitations of the Group III claims as restricted in the original application as compared to representative claim 28 of the appealed claims. (A158-159). As noted above, the Board ignored this evidence and substituted their own incomplete version of its table in its Decision (A10).

A representative comparison of reissue claim 28 to non-elected claims 30, 31 and 34 was provided by Morrison in the record at (A158-159). As seen in this comparison, new claim 28 is directed to a *method,* including the *manipulative steps* of "*assembling* the transmitter support frame sections and the transmitter coil and the cables to provide a flexible *hollow transmitter* support frame that is circular or approximates a circle, *having the transmitter coil disposed within* the hollow transmitter support frame, and formed from *serially connecting* the transmitter

28

support frame sections." No such manipulative steps can be found in the non-elected Group III claims, of which claim 34 is representative.

Also of note is the fact that non-elected claim 34 contains many specific structural recitations not required by method claim 28. These include: "a *receiver section disposed generally along the central axis of the transmitter section*…; wherein the transmitter section houses an *elastically suspended transmitter coil*…; and wherein the transmitter section and the receiver section *are connected by means of a plurality of connecting cables evenly distributed* along the circumference of each of the transmitter section and the receiver section." A "*receiver*" is not even mentioned in claim 28. This is because it is the large size of the *transmitter* section which creates the logistical problem of providing the invention at various locations about the country, not the "receiver" section 18, which is relatively small in size as compared to the transmitter section 16. (Compare elements 16 and 18 in Fig. 1 (A23) and Fig. 2 (A24)).

The fact that the Examiner never grouped the appealed claims during prosecution of the first or second reissues, as belonging to the non-elected invention, Group III, of the original patent, is a fact worth noting.

Thus, it is purely speculative as to whether an Examiner would have grouped the new claims 28-36 with the non-elected Group III invention, of which claim 34 is representative, or would have separately grouped them.

Moreover, it is clear that the PTAB's finding that "[we] see no substantial difference with respect to the scope and the structural features between the claims" is not supported by substantial evidence, but rather is based on the incomplete and inaccurate PTAB-created table (A10), purporting to compare the appealed representative claim 28 to representative non-elected claim 34.

### b. Secondly, the PTAB ignores the law of the case

The PTAB ignored the law of the case, i.e., the Examiner's findings justifying the original restriction requirement between the elected claims of Group I and the non-elected Groups II and III inventions in the original application.

The Examiner gave his reasons in the original application why the claims of the Group I invention were *separate and distinct* from the Groups II and III inventions.[10]

In the first reissue application, the Examiner additionally found that Group I (original claims 1-27) were *separate and distinct* from the appealed claims.[11]

---

[10] The Examiner found that "Groups II and III have a separate utility from Group I as not requiring a receiver antenna flexibly mounted to a receiver from or required a dual mode gain amplifier" citing MPEP § 806.05(d). (A208).

[11] I. Claims 1-27, drawn to a method and apparatus for airborne electromagnetic surveying and circuitry therefor, classified in class 324, subclass 330. II. Claims 28-33, drawn to an antenna for a tow assembly, classified in class 343, subclass 707, and further noted that: Inventions in Group I and II are related as subcombinations disclosed as usable together in a single combination. The subcombinations are distinct if they do not overlap in scope and are not obvious variants, and if it is shown that at least one subcombination is separately usable. In

The same reason given by the Examiner for finding that Groups I and II are separate and distinct in the reissue application as being related as subcombinations apply equally well to the reason the Examiner had in finding that Groups I and III are separate and distinct in the original patent, that is, the subcombinations are distinct if they do not overlap in scope and are not obvious variants, and, if it is shown that at least one subcombination is separately usable. Here, applicants in their Table (A158-159) had shown that representative claim 28 and representative claim 34 did not overlap in scope, and were separately useable. Furthermore, the fact that the Examiner did not Group claims 28-36 into the non-elected Group III, but instead gave reasons why the inventions, though related, are *separate and distinct*, simply cannot be ignored in favor of a reconstruction of the prosecution history of the original and reissue applications.

The PTAB recognizes in its Decision (A11) that the appealed claims *might not be grouped* with the non-elected Group III claims. Therefore, its suggestion that they might be grouped together is purely speculation on its part. See Decision, (A 11) ("That is, had they [the new claims 28-36] been presented in the original

---

the instant case, subcombination in Group II does not require the particular flexible support and the transmitter driver as required in Group I and thus has separate utility such as usable in apparatus not requiring such circuitry. Furthermore, the subcombination in Group I does not require the particular structure of transmitter support frames and connector cables as required in Group II and thus has separate utility as usable in apparatus not requiring such structures." (citing MPEP § 806.05(d)) (A221).

application, appealed claims 28-36 would also have been subjected to the same restriction *by either* being placed in Group III *or in a separate group* for similar reasons for restriction from Group I)." Therefore, the PTAB explicitly recognized that claims 26-36 would not inherently, or inevitably, have been placed in the same group as non-elected claim 34, even had they been filed in the original application. Although the foregoing analysis provides adequate reasons to find the PTAB erred, it is suggested that any attempt by the PTAB at reconstructing the prosecution history is fraught with potential error, as it is always conducted in hindsight. Nor is speculation upon what a "potential" restriction requirement might have looked like, had it been made in the original patent, a satisfactory alternative, as it is not an objective test. Restriction requirements are neither mandated by regulation, nor statute. Thus, the PTAB should not have attempted to proffer what the grouping of any restriction requirement "might" have been, as their decision recognizes that such was neither inherent, nor inevitable.

**3. Although courts had initially struggled with the proposition that overlooked subject matter might not, when added as new claims to a reissue application, be found to satisfy the "intent to claim" requirement, the courts have reconciled the notion of "intent to claim" as being synonymous with "right to claim."**

The PTAB cites *In re Weiler*, *supra*, F.2d at 1579, as standing for the proposition that:

> [E]ven if the present reissue claims were "not 'non-elected'" in the [original] Application, we agree with the Examiner that

> failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been error as set forth in § 251.

*Weiler* did not decide such an issue. *Weiler* was an "intent to claim" case. The court found that although the newly submitted claims 13 and 19 in *Weiler* had "some minimal support" in the specification, such minimal support was not enough to satisfy the "right to claim" analysis discussed above. The court also recognized that Weiler's specification disclosed as many as five distinct inventions.[12]  Some of these claims were subject to a restriction requirement, and Weiler did not file divisional applications to the non-elected inventions. The newly submitted claims 13 and 19 of the reissue application were not among the claims originally subject to restriction.  However, the court included the *dicta*:[13]

> By acquiescing in the examiner's restriction requirement, and failing to file divisional applications on the subject matter    of non-elected claims, Weiler foreclosed (because that was not error) his right to claim that subject matter.  If it were not error to forego divisional applications on subject matter to which claims had been made in the original application, it cannot on the present record have been error to forego divisional applications on subject matter to which claims had never been made.(sic-?)

---

[12] *Weiler, supra*¸ 229 USPQ at 676.

[13] *Weiler, supra*, 229 USPQ at 677.

The answer to Judge Markey's question is readily apparent. The *Orita* doctrine puts an applicant on notice that he must file divisional applications to the non-elected subject matter. Thus, Judge Markey's first sentence in the above quote is correct, because it is "not error" to fail to file divisional applications. However, there is no controlling authority that the *Orita* doctrine, or *Weiler*, applies to claims that have never been the subject of a restriction requirement. A reissue applicant is not "on notice" that the omitted subject matter is not part of the non-elected invention, and certainly, it is not inevitable that his new claims will be grouped with any non-elected inventions not pursued in divisional application(s). In such a case, the reissue applicant's "error" is obtaining a patent that is wholly or partly inoperative by reason in claiming less that applicant had a right to claim[14] in the patent.

Commentators on *Weiler* note that *Weiler* appears to set an unreasonably strict standard of what constitutes "error" sufficient to support a reissue application seeking to claim subject matter disclosed but not originally claimed in a patent. See Chisum on Patents, 4A§ 15.03[2][b][iv]. Contrary to the suggestion in *Weiler*, there is no essential or substantive difference between reissue claims that broaden the scope of what is covered in the original patent, and reissue claims that cover subject matter not claimed at all in the original patent. In each instance, the reissue

---

[14] Note that "right to claim" are the words of section 251, not an "intent to claim" as in *Weiler*.

applicant seeks to extend the scope of what is claimed. The USPTO no longer cites

to *Weiler*[15] in their Manual of Patenting Examining Procedure (MPEP), instead

cites to *Amos* for the proposition of "intent to claim" ("right to claim"). As noted

above, the court in *Amos* specifically addressed the shortcomings of the *dicta* in

*Weiler*, noting that the issue for decision in *Weiler* was "whether the patentee had

demonstrated error without deceptive intention, not whether the claims were to the

same invention as the 'original patent'"; *Amos*, *supra*, footnote 3.

> **4.  The PTAB's finding that "failing to file divisional applications on
> the subject matter to which the *claims had never been presented*,
> similar to failing to file divisional applications on subject matter
> to which *claims had been made in the original application* would
> not have been 'error' as set forth in § 251" is contrary to the
> precedent of this court**

While the PTAB seems to rely only on the "*Orita* doctrine" to support this

conclusion, it appears to be a melding of *Orita* and *Weiler*, as there is no provision

in *Orita* that deals with claims which were never subject to restriction.

*In re Wilder, supra*, deals with the failure of the attorney representing

applicants to appreciate the full scope of the invention, *Wilder*, *supra,* 222 USPQ

at 371. The board concluded that this was not error that may be corrected through

reissue merely *because the defect could have been discovered during prosecution*

of the original patent. *Id.*

---

[15]   A related case relied upon by the Examiner, but not mentioned by the PTAB is
*Ex parte Pagilagan*, 64 USPQ 2d 1629 (BPAI 2002).

However, the court in reversing the board, stated:

The error provision of 35 USC § 251 is to be liberally construed to permit correction of defects…The fact that the error could have been discovered at the time of prosecution with a more thorough patentability search or with improved communication between the inventors and the attorney does not, by itself, preclude a patent owner from correcting defects through reissue…An application for broader claims was filed within two years  after the original patent issued (internal citations omitted).

The rationale in *Orita* is that patent applicants know of the restriction requirement and that the non-elected claims will not be permitted to issue in the original patent. They are thus on constructive, if not actual, notice that they must file divisional application(s) directed to the non-elected inventions in order to obtain a patent on the non-elected invention(s) and that failure to so file the divisional application is therefore not an error correctable by reissue.

However, the fact that applicants could have discovered the error that additional subject matter is disclosed, but unclaimed (and hence not part of the original restriction requirement) does not deprive reissue applicants of a correctable "error" under the reissue statutes.

This is true even if that "error" in failing to claim such disclosed subject matter might have been discovered during the original prosecution, so long as the "error" arose without deceptive intent, as here. Thus, Morrison is not disqualified from a re-issuable "error" under section 251, in view of *Orita*, or a melding of *Orita* and *Weiler*, even though it *might theoretically have been* possible for applicant to

36

discover the error of having disclosed, but never claimed, subject matter during prosecution of the original application. As the PTAB concedes, it was neither inherent nor inevitable, that the new claims 28-36 would be grouped with the non-elected Group III claims, nor even restricted from the elected Group I claims. Only the course of prosecution determined the actual restriction, but that restriction does not preclude an "error" correctable by reissue.

## CONCLUSION

For all the foregoing reasons, the PTAB Decision sustaining the final rejection of the Examiner that the Original Patent was "error-free" are erroneous and contrary to the requirements of the reissue statutes (35 U.S.C. § 251 *et seq.*). A reversal of the PTAB Decision, and a finding that Morrison has satisfied the reissue statutes is respectfully requested.

Dated: December 30, 2013                    Respectfully submitted,

/s/Thomas P. Pavelko
Thomas P. Pavelko
Henry A. Petri, Jr.
Brian McKnight
Daniel P. Mullarkey
NOVAK DRUCE CONNOLLY BOVE +
QUIGG LLP
1875 Eye Street, NW
Eleventh Floor
Washington, DC 20006
(202) 331-7111
*Attorneys for Appellant*

# ADDENDUM



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/827,650 | 06/30/2010 | Edward Beverly Morrison | 18196.0006.REUS01 | 5461 |

65761        7590        07/18/2013
SAN FRANCISCO OFFICE OF
NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
1000 LOUISIANA STREET
FIFTY-THIRD FLOOR
HOUSTON, TX 77002

| EXAMINER |
|---|
| PATIDAR, JAY M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2858 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/18/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentgroup@novakdruce.com
amy.schlimgen@novakdruce.com
andrea.beck@novakdruce.com

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

*Ex parte* EDWARD BEVERLY MORRISON,
PETR VALENTINOVICH KUZMIN, and PAVEL TISHIN
_____

Appeal 2012-012266
Application 12/827,650
Patent 7,157,914 B2
Technology Center 2800
_____

Before MAHSHID D. SAADAT, DENISE M. POTHIER,
and JEFFREY S. SMITH, *Administrative Patent Judges*.

SAADAT, *Administrative Patent Judge*.

## DECISION ON APPEAL[1]

Appellants appeal under 35 U.S.C. § 134(a) from the rejection of claims 28-36 as lacking an error correctable by reissue. We have jurisdiction under 35 U.S.C. § 6(b).

We affirm.

_____

[1] An Oral Hearing for this appeal was held on February 4, 2013.

A2

Appeal 2012-012266
Application 12/827,650

## STATEMENT OF THE CASE

### *Introduction*

Appellants' invention relates to a Time Domain Electromagnetic

(TDEM) surveying method having improved sensor resolution. (*See* Spec.

col. 3, ll. 25-26).

### *Exemplary Claim*

28.    A method for providing a tow assembly for an
electromagnetic airborne survey system at an assembly
location, comprising:

providing a plurality of hollow transmitter support frame
sections;

providing a transmitter coil for generating a primary
magnetic field;

providing connector cables and a tow cable; and

assembling the transmitter support frame sections and the
transmitter coil and the cables to provide a tow assembly
having a flexible hollow transmitter support frame that is
circular or approximates a circle having the transmitter coil
disposed within the hollow transmitter support frame and
formed from serially connecting the transmitter support frame
sections, with the connector cables each having a first end
connected to a respective location on a circumference of the
transmitter support flame and a second end connected to a first
end of die tow cable.

### *The Rejection*

Claims 28-36 stand rejected under 35 U.S.C. § 251 for lack of defect

or error in the original patent and as not being an error correctable by

reissue. (*See* Ans. 5-6).

Appeal 2012-012266
Application 12/827,650

## FINDINGS OF FACT

### *Prosecution History*

1.      Appellants filed U.S. Application No. 10/716,813 ("813

Application") on Nov. 20, 2003.

2.      On May 8, 2006, the Examiner required restriction to three

patentably distinct groups of claims as follows:

> I.      Claims 1, 3-10, 12, 13, 15-28, 32, and 33, drawn to a
> method and apparatus using a tow assembly, the assembly comprising
> a flexible frame, the receiver flexibly connected to a receiver support
> frame and a dual mode gain amplifier, classified in class 324, subclass
> 330.

> II.      Claim 29, drawn to a computer program comprising a
> computer readable medium and instructions to operate a general
> electromagnetic antenna assembly, classified in class 702, subclass 5.

> III.      Claims 30, 31, 34, and 35, drawn to trailing airborne
> surveying systems having specific antenna structures, classified in
> class 343, subclass 707.

3.      On August 18, 2006, Appellants filed a response to the

Examiner's Restriction Requirement and elected to prosecute the claims of

group I.  Appellants did indicate that "[t]his election/restriction is made by

the Applicant without prejudice to the right to file one or more divisional

applications comprising the subject matter of species (II) or (III)."  However,

no such divisional application was filed.

4.      On January 2, 2007, Application 10/716,813 issued as U.S.

Patent 7,157,914 ("914 Patent") including claims 1, 3-10, 12, 13, 15-28, 32,

and 33 (renumbered as claims 1-27).

5.      On December 23, 2008, Appellants filed reissue U.S.

Application No. 12/343,321 ("Reissue Application").

3

**A4**

Appeal 2012-012266
Application 12/827,650

6.      In U.S. Application No. 12/343,321, claims 1-27 were claims 1, 3-10, 12, 13, 15-28, 32, and 33 of 813 Application and newly added claims 28-33 were directed to a method for providing a tow assembly.

7.      On December 10, 2009, the Examiner required restriction to one of the following two inventions:

> I.      Claims 1-27, drawn to a method and apparatus for airborne electromagnetic surveying and circuitry therefor, classified in class 324, subclass 330.

> II.      Claim 28-33, drawn to an antenna for a tow assembly, classified in class 343, subclass 707.

8.      On March 10, 2010, Appellants filed a response to the Examiner's Restriction Requirement and elected to prosecute the claims of group I.

9.      On June 30, 2010, Appellants filed (as a divisional of Application 12/343,321) reissue U.S. Application No. 12/827,650 containing claims 28-36 alleging error as follows:

> in overlooking embodiments of my invention which pertain to a method for providing a tow assembly for an electromagnetic airborne survey system at an assembly location, comprising: providing a plurality of transmitter support frame sections, a transmitter coil for generating a primary magnetic field, connector cables and a tow cable and assembling the transmitter support frame sections and the transmitter coil and the cables to provide a tow assembly having a transmitter support frame that is circular or approximates a circle bearing the transmitter coil and formed from serially connecting the transmitter support flame sections, with the connector cables each having a first end connected to a respective location on a circumference of the transmitter support frame and a second end connected to a first end of the tow cable.

10.      On August 24, 2011, the Examiner finally rejected claims 28-36 under 35 U.S.C. § 251 as being improper for reissue.

Appeal 2012-012266
Application 12/827,650

11.    On February 23, 2012, Appellants filed an appeal of the Examiner's final rejection.

### The Examiner's Rejection

12.    The Examiner found that a restriction requirement had been made during prosecution of application for the 914 Patent between Groups I, II, and III, where Appellants elected without traverse to prosecute the invention of claims Group I including claims 1, 3-10, 12, 13, 15-28, 32, and 33 of the 813 Application and "never filed any divisional applications covering such non-elected species" (Ans. 5).

13.    The Examiner found further that

> The claims of the present divisional reissue application read on or are broader versions of the claims in Group III (claims 30, 31, 34 and 35) of the '813 application and thus cover the primary features of the Group, i.e., the specific features of the antenna structures of the towed assembly. Alternatively, *if these divisional reissue claims were presented in the '813 application during prosecution thereof, they would also have been subject to the same restriction by either being placed in Group III or in a separate group* for similar reasons for restriction from Group I. Thus, the present claims should have been presented in a divisional application to the parent application.

(Ans. 5-6) (Emphasis added).

14.    The Examiner concluded that "failure of Applicants to file a divisional application during the pendency of the '813 application (which later issued to the '914 patent) does not amount to an error correctable by reissue" (Ans. 6).

### Issues on Appeal

1.    Is the failure to present claims 28-36 during the prosecution of the 914 Patent an error that can be corrected by reissue?

5

**A6**

Appeal 2012-012266
Application 12/827,650

2.     Are appealed claims 28-36 of reissue U.S. Application No.
12/827,650 substantially identical to claims of the non-elected groups
identified in the Examiner's restriction requirement during the prosecution
of the 914 Patent?

PRINCIPLES OF LAW

The section of the patent statute providing for correction of errors in a
patent by reissue of the patent reads, in relevant part:

> Whenever any patent is, through error, deemed wholly or partly
> inoperative or invalid . . . by reason of the patentee claiming
> more or less than he had a right to claim in the patent, the
> Director shall, on the surrender of such patent and the payment
> of the fee required by law, reissue the patent for the invention
> disclosed in the original patent.

35 U.S.C. § 251, first paragraph.

"[T]he whole purpose of the [reissue] statute, so far as claims are
concerned, is to permit limitations to be added to claims that are too broad or
to be taken from claims that are too narrow." *In re Weiler*, 790 F.2d 1576,
1580 (Fed. Cir. 1986) (quoting *In re Handel*, 312 F.2d 943,948 (CCPA
1963)).

The *"Orita* doctrine" precludes applicants from obtaining by reissue
claims which, because of a requirement for restriction in which they had
acquiesced, they could not claim in their patent. *In re Orita,* 550 F.2d 1277,
1280 (CCPA 1977).

When applicants acquiesce in the Examiner's requirement for
restriction, such action manifestly is not "error" causing patentee to claim
"less than he had a right to claim in the patent" in the language of 35 U.S.C.
§ 251. *Id.* 550 F.2d at 1280.

6

**A7**

Appeal 2012-012266
Application 12/827,650

The so-called *Orita* doctrine precludes reissue applicants from
obtaining substantially identical claims to those of non-elected groups
identified in an Examiner's restriction requirement when such claims could
not have been prosecuted in the application from which they were restricted.
*In re Doyle,* 293 F.3d 1355, 1359 (Fed. Cir. 2002).

## ANALYSIS

We have reviewed the Examiner's rejection in light of Appellants'
contentions that the Examiner has erred. We disagree with Appellants'
conclusions. We agree with the Examiner that with respect to claims 28-36
on appeal, the patent resulting from the prosecution of the 813 Application
was error-free.

Appellants argue that the Examiner erred in failing to recognize that
the present claims "to the 'method for providing a tow assembly,' which
were never part of the subject matter claimed during the prosecution of the
original '914 patent . . . [and] were never held to be patentably distinct
during the prosecution of the '813 application" (App. Br. 5). Appellants
conclude that, contrary to the decision in *Weiler*, 790 F.2d at 1579, failure to
file a divisional application to the non-elected Groups in the original '813
application has no bearing on the present reissue claims which were "not
'non-elected' in that application" (*id.*).

According to Appellants (App. Br. 11), "in the instant reissue
application, claims to an overlooked invention were never filed in the
original application," and therefore, relate to a situation different from that
of *Orita*, 550, F.2d at 1280 (the failure to file a timely divisional application
to non-elected subject matter is not error correctable by reissue). Moreover,

7

**A8**

Appeal 2012-012266
Application 12/827,650

Appellants argue that "*Orita* does <u>not</u> address the situation in which an invention that was fully disclosed in an original application for patent . . . was overlooked by the applicant through error without deceptive intent" (Reply Br. 11).

We disagree. The critical issue is the relation of the subject matter of newly presented claims 28-36 to the subject matter covered by Groups I - III of the restriction requirement of the 813 Application. Contrary to Appellants' arguments that appealed claims 28-36 "could never be a part of any restriction requirement promulgated in that original application, because there were no claims to that invention" (*id.*), appealed claims 28-36 are substantially identical claims to those of nonelected Group III (claims 30, 31, 34, and 35) identified in the Examiner's restriction requirement of the 813 Application. As stated above, the reissue claims asserted in *In re Orita* did not just read on nonelected subject matter, but rather were "substantially identical to those non-elected in [the] application." *Orita*, 550 F.2d at 1280. Therefore, presently appealed claims 28-36 could not have been prosecuted in the 813 Application from which their invention (Group III, including claims 30, 31, 34, and 35) was restricted.

In the following table, we compare the subject matter of claim 28 of the present reissue Application to the subject matter of claim 34 of the 813 Application, grouped in the non-elected Group III. We note the nominal recitation of "a method for providing" followed by steps of "providing" and "assembling" in claim 28 of the present application, but see no substantial difference with respect to the scope and the structural features between the claims.

8

**A9**

Appeal 2012-012266
Application 12/827,650

| | Reissue Application No. 12/827,650 Claim 28 | Application No. 10/716,813 Non-Elected Claim 34 |
|---|---|---|
| 1 | A method for providing a *tow assembly for* an electromagnetic *airborne survey system* at an assembly location, comprising: | A *tow assembly apparatus for airborne* time domain electromagnetic *surveying* comprising: . . . the transmitter section can be assembled and disassembled . . . |
| 2 | providing *a plurality of hollow transmitter support frame sections*; . . . to provide *a tow assembly having a flexible hollow transmitter support frame* . . . | (a) A *flexible support frame* including: (i) *A transmitter section* having a central axis and *consisting of a plurality of interconnectable transmitter section frame members*, such that the transmitter section can be assembled and disassembled, and the transmitter section frame members define a polygonal profile; and |
| 3 | providing *a transmitter coil* for generating a primary magnetic field; | Wherein the transmitter section houses an elastically suspended *transmitter coil* |
| 4 | providing *connector cables* and a tow cable; | Wherein the transmitter section and the receiver section arc connected by means of *a plurality of connecting cables* |
| 5 | with *the connector cables each having a first end connected to a respective location on a circumference of the transmitter support frame and a second end connected to a first end of the tow cable.* | Wherein *the tow assembly apparatus is connected to the aircraft by means of at least one cable means connected to the transmitter section at a plurality of points*; |

9

Appeal 2012-012266
Application 12/827,650

A comparison of the subject matter of method claim 28 of the present reissue Application 12/827,650 to the subject matter of apparatus claim 34 of the 813 Application leads us to a similar invention in that there is no substantial difference between the claims even though they are directed to different statutory categories. In this case, these claims are simply not patentably distinct. Under *Orita*, of course, there is no correctable error in failing to prosecute divisional applications on inventions of the non-elected groups identified by the Examiner in the original restriction requirement.

We also disagree with Appellants that failure to file a divisional application to the non-elected Groups in the original 813 Application has no bearing on the present reissue claims which were "not 'non-elected' in that application" (App. Br. 5). That is, had they been presented in the original application, appealed claims 28-36 would also have been subjected to the same restriction by either being placed in Group III or in a separate group for similar reasons for restriction from Group I. Consistent with the decision in *Weiler*, 790 F.2d at 1579, even if the present reissue claims were "not 'non-elected'" in the 813 Application, we agree with the Examiner that failing to file divisional applications on the subject matter to which the *claims had never been presented*, similar to failing to file divisional applications on subject matter to which *claims had been made in the original application* would not have been "error" as set forth in § 251 (*see* Ans. 10).

We conclude that as a matter of law, the "Orita doctrine" precludes Appellants from obtaining by reissue the claims on appeal.

10

**A11**

Appeal 2012-012266
Application 12/827,650

## CONCLUSION

The Examiner did not err in rejecting claims 28-36 as being improper for reissue.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(1)(iv).

<u>AFFIRMED</u>

ELD

11

**A12**

**United States Court of Appeals**
**for the Federal Circuit**
*In Re Morrison,* 2014-1050

**CERTIFICATE OF SERVICE**

I, Thomas P. Pavelko, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **December 30, 2013**, I caused the foregoing **Brief for Appellant** to be electronically filed the with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Nathan K. Kelley
> William LaMarca
> Kristi L.R. Sawert
> UNITED STATES PATENT AND TRADEMARK OFFICE
> OFFICE OF THE SOLICITOR
> P.O. Box 1450, Mail Stop 8
> Alexandria, VA 22213-1450
> (571) 273-0373
> nathan.kelley@uspto.gov
> william.lamarca@uspto.gov
> kristi.sawert@uspto.gov
> *Attorneys for Appellee*

Additionally, I will cause two paper copies will also be serviced by mailed to the above counsel via Priority Mail when the paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six confidential paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

December 30, 2013                    /s/Thomas P. Pavelko
                                     Thomas P. Pavelko
                                     Counsel for Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   x    The brief contains <u>8,647</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

   _    The brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   x    The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2007</u> in a <u>14</u> point <u>Times New Roman</u> font or

   _    The brief has been prepared in a monospaced typeface using <u>MS Word 2002</u> in a ___ characters per inch_____ font.

Date   December 30, 2013          <u>/s/Thomas P. Pavelko</u>
                                      Thomas P. Pavelko
                                      Counsel for Appellant